UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
UNITED STATES OF AMERICA,

        -against-                                 **MEMORANDUM AND ORDER**
                                                      21-CR-179 (GRB)

RAYQUANN HOUPE,
       also known as "Quan" and
       "Rich Homie Quan,"

                        Defendant.
-------------------------------------------------------------X

**GARY R. BROWN, United States District Judge:**

       In this narcotics prosecution, defendant Rayquann Houpe ("defendant" or "Houpe") opted, after the Court made appropriate inquiry and provided suitable cautions, to proceed *pro se*, and now seeks to withdraw his guilty plea on the unusual (though not unprecedented) grounds that his standby counsel was ineffective. Specifically, defendant contends that standby counsel erred in failing to prevent Houpe from entering a plea agreement by which he "waive[d] his rights to challenge the type of drug and amount of such, despite its actuality, and other rights in exchange for what he believed would end up being a 10 year sentence." Docket Entry ("DE") 37 at 1. The motion to withdraw the guilty plea is without basis and therefore denied. Out of an abundance of caution, however, the Court will permit Houpe to challenge the drug types and quantities at sentencing, provided he has a principled reason to do so.

       **BACKGROUND**

       On April 4, 2021, defendant Houpe was indicted for conspiring to distribute narcotics in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(iii) and related use of firearms under 18 U.S.C. § 942(c)(1)(A). DE 1. Following his arrest, the defendant retained counsel.

1

On August 25, 2021, defendant indicated a desire to discharge his counsel and proceed *pro se*. DE 14. The Court endeavored to engage defendant in a colloquy to ensure that defendant was making a knowing and intelligent waiver of his rights. *See* Tr. of Proceedings dated August 25, 2021, DE 44 . The defendant was largely uncooperative, refusing to answer the Court's inquiries. *Id.* However, upon direction, the defendant did answer questions revealing that he claimed to not understand the charges against him. *Id.* at 10-12. Based on this professed inability to understand the charges, the Court directed, upon the Government's motion, a competency evaluation.[1] *Id.* at 12-13; Minute Entry dated August 25, 2021; DE 15.

A competency report was produced following a study, which opined, among other things, that the defendant "demonstrated an adequate understanding of the charges against him." Forensic Evaluation, dated December 13, 2021, DE 40 at 9. After review, the Court adopted these findings without objection. Minute Entry dated May 2, 2022, DE 20. The defendant renewed his motion to proceed *pro se*; after appropriate inquiry, the motion was granted and counsel was relieved. *Id.*

---

[1] Several letters by the Government and the minute entry relating to that appearance mischaracterize the proceeding and misapprehend the basis of this determination. *See* DE 38 at 2 ("When the defendant continued to refuse to answer the Court's questions, a competency exam was ordered"); DE 15 at 3 ("Because of the defendant's abnormal behavior, repeated request to proceed *pro se* and his refusal to answer the Court's questions, which were necessary to determine if he has the ability and competency to represent himself, the government respectfully requests that the Court order a competency exam"); Minute Entry 8/25/21 ("Defendant advised of his rights and questioned regarding proceeding pro se. Defendant refuses to answer questions presented."). In fact, the transcript reveals the following colloquy:

> THE COURT: Sir, do you understand that you've been charged with conspiracy to distribute and possession with the intent to distribute cocaine base in the amount of 280 grams or more? Do you understand that? [ ]
>
> THE DEFENDANT: No, I do not understand, sir.
>
> THE COURT: You don't understand that you've been charged with drug dealing charges?
>
> THE DEFENDANT: No.

Tr. of Proceedings dated August 25, 2021, DE 44 at 11-12. Based upon the defendant's professed inability to understand the charges, the Government moved for a competency exam. *Id.* at 12-13. Houpe's retained counsel, who continued to represent him at that juncture, agreed to the application. *Id.* at 13. Accordingly, the Court ordered a competency exam. *Id.*

2

Though Mr. Houpe resisted the Court's offer to appoint CJA standby counsel, the Court indicated that it would do so nonetheless. *Id.* As such, on May 17, 2022, the Court appointed Anthony LaPinta, Esq., to serve as standby counsel for the defendant. DE 19. Defendant, acting *pro se*, entered plea discussions with the Government. Tr. of Proceedings dated June 10, 2022, DE 42 at 3-4.

At subsequent conferences, the defendant, acting *pro se*, repeatedly reiterated his lack of interest in the assistance of standby counsel. The following exchange, which occurred at a July 29, 2022 status conference, will serve merely as an example (as there are other similar instances):

> THE COURT: And I note we have Mr. La Pinta here who is still your standby counsel, right, Mr. Houpe?
>
> THE DEFENDANT: Assistant, yeah.
>
> THE COURT: Mr. LaPinta is here to help you, yes?
>
> THE DEFENDANT: The last time we spoke in the courtroom, your Honor, you said that I didn't have to have Mr. LaPinta sitting here.
>
> THE COURT: You don't have to have him sitting here, but I told you as a favor to me, he would he sit here in case you needed to talk to him. That's not a problem, right?
>
> THE DEFENDANT: It is a problem.
>
> THE COURT: What's the problem?
>
> THE DEFENDANT: I don't need Mr. LaPinta's assistance.

DE 41 at 2-3; *cf.* Tr. of Proceedings dated June 10, 2022, DE 42 at 2 (noting that standby counsel was appointed though defendant wasn't "interested").

In August of 2022, a superseding indictment was filed which had the effect of increasing the mandatory minimum sentence regarding the narcotics count to ten years. DE 26. At his arraignment on August 12, 2022, defendant represented himself; standby counsel participated via

3

telephone. Tr. of Proceedings dated August 12, 2022, DE 42 at 3 (defendant declines to waive public reading of indictment); *id.* at 16-17 (defendant enters not guilty plea); *id.* at 17-8 (discovery provided directly to defendant); *id.* at 19-22 (defendant argues criminal history calculation); *id.* at 24 (defendant moves for bill of particulars). Upon an application made by the defendant, the Court set jury selection and a trial for September 12, 2022. *Id*. at 25-27; Minute Order dated 8/15/22. Because standby counsel was unavailable on the scheduled trial date, Houpe indicated his intention to proceed to trial without him, and insisted that the Government not provide copies of 3500 material to standby counsel. Tr. of Proceedings dated August 12, 2022, DE 42 at 28-30.

Soon thereafter, the defendant entered a plea of guilty pursuant to a plea agreement reached with the Government. The plea was taken before Magistrate Judge Tiscione. DE 31. The plea agreement provided, among other things, that the defendant would plead guilty to Count One, providing for a statutory sentencing range of a minimum of ten years to a maximum of life, and that the Government estimated his Sentencing Guidelines range to be 151-188 months. *Id.* at 15. Directly following this Guidelines calculation, the agreement provides that:

> The defendant stipulates to the above Guidelines calculation. The defendant agrees that he will not challenge the drug type and quantity set forth in the lab reports.

Moreover, in that agreement, the defendant represented that:

> I have read the entire agreement and discussed it with my attorney. I understand all of its terms and am entering into it knowingly and voluntarily.

The defendant, designated as "Defendant Pro Se" signed immediately below this provision, and the appointed standby counsel "approved" the agreement, signing it above a signature line that read "Standby Counsel to Defendant Pro Se."

During the plea proceeding, Magistrate Judge Tiscione carefully reviewed the plea agreement with the defendant, who acknowledged reviewing all its terms and signing the document. DE 31 at 11-12. The agreement provided for a plea to the narcotics count only, and a

dismissal of the mandatory consecutive term under the firearms count. The Government set forth its Guidelines estimate, which suggested an advisory range of 151 to 188 months. *Id.* at 15. Judge Tiscione advised the defendant, who acknowledged that he understood, if the estimate was wrong, "you're not going to be permitted to withdraw your guilty plea on the basis of the incorrect estimate." *Id.* at 14-15. Defendant also testified that he had received no promise as to the sentence that would be imposed. *Id.* at 17. At the plea proceeding, the defendant specifically admitted to distributing at least 280 grams of crack cocaine and more than five kilograms of cocaine. *Id.* The defendant acknowledged that, at times, he would cook cocaine into crack himself. *Id.* Magistrate Judge Tiscione found that the defendant was "acting voluntarily, that he understands his rights, and the consequences of his plea and that there's a factual basis for the plea," and therefore recommended its acceptance. *Id.* at 18. On August 24, 2022, the undersigned entered an order accepting that recommendation. Electronic Order dated August 24, 2022.

By a motion filed on January 4, 2023, defendant seeks to withdraw the plea. DE 37. In that motion, defendant conclusorily claims that his plea "was not voluntary, knowing or intelligent," *id.* at 2 *ff.*, assertions that are undermined by his sworn testimony at the plea allocution. DE 31. The main thrust of the motion, however, is the supposed ineffective performance of standby counsel. Principally, defendant criticizes his standby counsel for "remain[ing] silent during plea negotiations," failing to ensure that there were no violations of *Apprendi*, and "fail[ing] to inform the defendant (as evidenced by page 3) of the Plea Agreement . . . that defendant will not challenge the drug type and quantity." DE 37 at 4.

This opinion follows.

**DISCUSSION**

1. *Ineffective Assistance of Standby Counsel*

As noted, defendant's main basis for seeking withdrawal of his plea is purported ineffective assistance of his standby counsel. The Supreme Court has observed that a court:

> may—even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary. [Yet] a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of "effective assistance of counsel."

*Faretta v. California*, 422 U.S. 806, 834, n. 46 (1975). In *United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir. 1997), the district court, "acting over Schmidt's objection but within its discretion," appointed standby counsel. In that matter, the defendant represented herself at trial and was convicted. On appeal, she argued, among other things, that the district court had made inadequate inquiry as to her waiver of her right to counsel and that the performance of the standby counsel appointed "was so deficient and prejudicial to her that it constituted ineffective assistance of counsel." *Schmidt,* 105 F.3d at 89. The Circuit held:

> Having chosen to represent herself, she may not now be heard to complain that her own shortcomings spell out some sort of constitutional deprivation. [T]here is no constitutional right to hybrid representation of the kind defendant received here where she shared the duties of conducting her defense with a lawyer. Absent a constitutional right to standby counsel, a defendant generally cannot prove standby counsel was ineffective. As might be expected, a standby counsel's duties are considerably more limited than the obligations of retained or appointed counsel. []. Because Schmidt proceeded *pro se*, she may not now assign blame for her conviction to standby counsel.

*Id.* at 90. Much the same can be said of the instant case. Having opted to represent himself, defendant cannot now be heard to complain that he was misguided by standby counsel appointed over his objection.

In *Schmidt,* the Circuit recognized a narrow exception to this general principle, noting that it might "entertain a claim for ineffective assistance of standby counsel if standby counsel 'held

6

that title in name only and, in fact, acted as the defendant's lawyer throughout the proceedings.'" *United States v. Morrison*, 153 F.3d 34, 55 (2d Cir. 1998) (quoting *Schmidt* 105 F.3d at 90); *United States v. Archambault*, 740 F. App'x 195, 199 (2d Cir. 2018) (same). In this case, defendant plainly – and at times vehemently – insisted that he was representing himself, resisting the appointment and involvement of standby counsel and, as demonstrated by the procedural summary above, actively conducted his own representation. Thus, Houpe would not appear to fall within the narrow exception defined in *Schmidt*.

Even assuming he could pursue a claim that his standby counsel was ineffective, Houpe has failed to articulate a factual basis for such a claim. His primary argument that he was unaware of the waiver of any challenge to the drug types and quantities because standby counsel failed to advise him of the same is belied by the express, unambiguous terms of the plea agreement and Houpe's sworn statements at the plea allocution hearing.[2]  Thus, the argument concerning standby counsel is substantively and procedurally meritless.

2. *Discretionary Leave to Permit Withdrawal*

That Houpe failed to establish a right to withdraw his guilty plea does not end the inquiry. While "a defendant has no absolute right to withdraw his plea of guilty," *United States v. Avellino*, 136 F.3d 249, 261 (2d Cir. 1998); *United States v. Terry*, No. 18-CR-560 (GRB), 2022 WL 2954085, at *4 (E.D.N.Y. July 26, 2022), the Court "may" permit withdrawal of a plea upon the demonstration of "a fair and just reason" under Fed. R. Crim. P. 11(d)(2)(B). The determination ultimately falls within the Court's discretion, though such discretion must be exercised in the context of the gravity of such determinations.

---

[2] To be sure, Houpe raises a panoply of other claims intended to suggest that his plea was involuntarily entered, *e.g.* duress, harsh prison conditions, fear of contracting COVID-19, etc. DE 37 at 3. To the extent defendant claims that such concerns "caused him to plead guilty," *id.*, these assertions are undermined by his unequivocal sworn representations at the plea allocution. DE 31 at 16.

7

"Society has a strong interest in the finality of guilty pleas, and allowing withdrawal of pleas not only undermines confidence in the integrity of our judicial procedures, but also increases the volume of judicial work, and delays and impairs the orderly administration of justice." *United States v. Maher*, 108 F.3d 1513, 1529 (2d Cir. 1997) (alterations omitted). In considering a request to withdraw a guilty plea, a "district court should examine the amount of time elapsed between the plea and the subsequent motion to withdraw, and whether the defendant's motion to withdraw his plea asserted his innocence, as well as giving due regard to any prejudice the government might suffer as a result." *United States v. Karro*, 257 F.3d 112, 117 (2d Cir. 2001) (citations omitted). On balance, these factors weigh against allowing a withdrawal of the plea.

First, in his motion, defendant represents that less than 30 days elapsed after the entry of the plea before he made the motion. DE 37 at 5. His handwritten "certification" of mailing bears a date of September 16, 2022 – the 30th day – though the envelope in which it came does not bear a mailing date. DE 37. The motion was not received by the Clerk until January 4, 2023, more than four months after the entry of the plea. That was, perhaps fortuitously, the same date that the Court received another submission from the defendant, dated and postmarked in December 2022. Nevertheless, the Government does not oppose the point, and the Court will assume that it was mailed promptly.

Second, his submissions make absolutely no non-conclusory claims of innocence (and his detailed allocution and other communications would belie any such claim). Rather, the motion appears to be based upon some belief developed by defendant that he would receive a ten-year sentence. DE 37 at 1 (defendant claiming that he "waive[d] his rights to challenge the type of drug and amount of such, despite its actuality, and other rights in exchange for what he believed would end up being a 10 year sentence."). That a defendant's request to withdraw a plea reflects "a change

8

of heart prompted by his reevaluation of either the government's case against him or the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea." *Schmidt*, 373 F.3d at 102 (citation omitted).

Third, the Government properly argues that it would incur substantial prejudice from a withdrawal of the plea. Notably, "the government need not demonstrate prejudice where the defendant fails to show sufficient grounds to justify withdrawal of the plea," *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997), and no such grounds have been established here. Nevertheless, the defendant entered a guilty plea after the Government had already begun preparing for trial. DE 38 at 9. To impose those significant costs upon the Government a second time can only be characterized as prejudice. *United States v. Lopez*, 385 F.3d 245, 254–55 (2d Cir. 2004) ("'Prejudice' in the context of plea withdrawal typically refers to depriving the Government of the benefit of its bargain by having the burden of trial preparation suddenly thrust upon it, as well as the potential difficulty to the Government in securing evidence against the defendant that would have been easier to secure at an earlier moment in time.").

Thus, these factors weigh against the exercise of discretion to permit withdrawal of the guilty plea, and defendant's motion is hereby DENIED.

### 3. *Motion for Relief from Provisions of the Plea Agreement*

Inherent in the defendant's motion to withdraw his plea – a *pro se* filing that must be liberally construed – is a subordinate motion for relief from certain provisions of the plea agreement. More specifically, although he fails to explain the factual basis for this contention, the defendant argues against the waiver of his right to challenge drug types and quantities in anticipation of sentencing. Notwithstanding defendant's failure to adequately articulate this claim, out of an abundance of caution, the Court will grant the following limited relief: to the extent

9

defendant has some factual basis to challenge the lab findings regarding drug types and quantities, he will be permitted, in the context of a *Fatico* hearing, to raise such issues.

To be sure, where, as here, a waiver contained in a plea agreement is unambiguous, generally "the Government is entitled to the benefit of the bargain as well." *Santiago-Diaz v. United States*, 299 F. Supp. 2d 293, 297 (S.D.N.Y. 2004) ("Plea agreements involve a *quid pro quo* between a criminal defendant and the government.") (citing *INS v. St. Cyr*, 533 U.S. 289, 321–22 (2001)). At the same time, the Court is required to extend special consideration given defendant's status as a *pro se* litigant. *See, e.g.*, *United States v. Rodriguez*, 2015 WL 12696045, at *3 (N.D.N.Y. Jan. 22, 2015) ("[T]he Court grants that motion to amend out of special solicitude to Defendant as a pro se litigant."). Thus, to the extent defendant has a good faith factual basis upon which to challenge the laboratory findings, he will be permitted to raise such issues, notwithstanding the express waiver.

While the Government unquestionably faces some prejudice on account of this ruling, the Circuit has drawn a clear distinction between the prejudice to the Government from the withdrawal of a guilty plea compared to withdrawal from aspects of the plea agreement. *Lopez*, 385 F.3d at 254–55 ("The only prejudice to the Government in a case like this is that it may be forced to litigate the defendant's sentence (which, under a typical plea agreement, is subject to stipulation) and, perhaps, defend or seek an appeal from whatever sentence is imposed. These added burdens are not trifling, but they are not as onerous or as unpredictable as those associated with withdrawal of a guilty plea."). The Court does not find that defendant has demonstrated that entry into the plea agreement was involuntary. *Id.* ("[T]he district court should ask whether there is credible evidence that the defendant did not freely and voluntarily enter into the plea agreement, either because he was coerced or improperly induced to accept its terms, or because he misunderstood

them."). Rather, to insure against the risk that defendant has, in fact, some legitimate challenge to the drug types and quantities asserted by the Government that he improvidently bargained away, the defendant will be permitted to raise such claims.

### CONCLUSION

Based upon the foregoing, the defendant's motion to withdraw his guilty plea is DENIED. To the extent defendant seeks relief from the provisions of the plea agreement, such motion is also DENIED except to the limited extent set forth above.

**SO ORDERED.**

Dated: April 7, 2023
      Central Islip, New York

                                                /s/ Gary R. Brown
                                        HON. GARY R. BROWN
                                        UNITED STATES DISTRICT JUDGE